## ALPHA PORTLAND CEMENT COMPANY *v.* COMMONWEALTH OF MASSACHUSETTS.

ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

Nos. 103 and 327. Argued October 23, 1924.—Decided May 4, 1925.

1. A State may not impose upon a foreign corporation which transacts only interstate business within her borders an excise tax measured by a combination of the total value of capital shares attributed to transactions therein, and the proportion of net income attributed to such transactions. Mass. Gen. Ls. c. 63. P. 216.

2. Any excise laid on account of interstate commerce is invalid, without regard to measure or amount. P. 217.

3. Under the Commerce Clause and the Fourteenth Amendment, a State may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business; the amount demanded is unimportant, and payment as a condition precedent to doing business is not a controlling element. *Baltic Mining Co.* v. *Massachusetts* 231 U. S. 68, 87, in part disapproved. P. 218.

248 Mass. 156; 244 *Id.* 530, reversed.

ERROR to judgments of the Supreme Judicial Court of Massachusetts sustaining excise taxes imposed on the plaintiff in error corporation.

*Mr. Louis H. Porter,* with whom *Messrs. F. Carroll Taylor* and *John G. Palfrey* were on the brief, for plaintiff in error.

*Mr. Alexander Lincoln,* Assistant Attorney General of Massachusetts, with whom *Mr. Jay R. Benton,* Attorney General, was on the brief, for the defendant in error.

The tax, so far as measured by the value of the corporate excess employed within the Commonwealth, is valid as to foreign corporations engaged solely in interstate commerce. It is well established that property of a non-resident located within a State is subject to taxation by it, although the property is used exclusively in interstate commerce, except when it is actually in the course of an interstate journey, if the tax is laid without discrimination. Apparently the petitioner concedes the application of this rule to tangible personal property, but contends that the rule is otherwise with respect to intangible assets such as a corporate franchise and credits due from residents. So far as the franchise is concerned, the point seems to be concluded by the decisions of this court. *Atlantic & Pac. Tel. Co.* v. *Philadelphia,* 190 U. S. 160; *Horn Silver Mining Co.* v. *New York,* 143

U. S. 305; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 696.

The objection to a tax on credits due from residents to non-residents may be based upon the contention either that intangible property is not subject to the foregoing rule or that a tax on such credits is in violation of the Fourteenth Amendment. As to the second point it is submitted that the petitioner is concluded by numerous decisions sustaining state taxation of credits due to non-residents. *New Orleans* v. *Stempel,* 175 U. S. 309; *Bristol* v. *Washington County,* 177 U. S. 133; *Board of Assessors* v. *Comptoir National D'Escompte,* 191 U. S. 388; *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395; *Liverpool, etc., Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346, 354; *Shaffer* v. *Carter,* 252 U. S. 37, 52.

The fact that such credits arise from and are used exclusively in interstate commerce, it is submitted, makes no difference. The rule with respect to the taxation of property used in interstate commerce does not distinguish between tangible and intangible property. The validity of the tax does not depend on the connection of the property with some local business but on the remoteness of any burden or effect upon interstate commerce. See *Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, 222; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450, 456; *Pullman Co.* v. *Richardson,* 261 U. S. 330.

If a tax on tangible and intangible assets, including the corporate franchise of a foreign corporation, employed in a State, although employed exclusively in interstate commerce, is valid, an excise tax measured by such property should also be valid. A tax measured by property may be valid when a tax on the property itself would be invalid. *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 165; *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 87. But the

converse is not true. This Court has on several occasions held that such a tax is in effect a tax on property and therefore in no respect repugnant to the Federal Constitution. *Western Union Tel. Co.* v. *Massachusetts, supra.*

The tax, so far as measured by net income derived from business within the Commonwealth, is valid as to foreign corporations engaged solely in interstate commerce. The income of a non-resident is subject to taxation within the State where it was earned or accrued. *Shaffer* v. *Carter,* 252 U. S. 37; *Travis* v. *Yale & Towne Mfg. Co.* 252 U. S. 60. Such a tax does not constitute a direct interference with interstate commerce. *Peck* v. *Lowe,* 247 U. S. 165, 174, 175; *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 326–329; *Shaffer* v. *Carter,* supra; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 119, 120; *Atlantic Coast Line* v. *Daughton,* 262 U. S. 413, 416, 420. See also *Schwab* v. *Richardson,* 263 U. S. 88; *Transport & Terminal Co.* v. *New Orleans,* 264 U. S. 150, dissent; 32 *Harv. L. R.* 634–640, 646–649; 12 Calif. L. R. 39–44. Cf *Knowlton* v. *Moore,* 178 U. S. 41, 59.

The taxes assessed were measured by the value of property used and net income earned within the Commonwealth.

Mr. *Basil Robillard* filed a brief as *amicus curiae,* by special leave of Court.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Plaintiff in error, claims that the Commonwealth illegally exacted of it $800.45 as an excise tax for the year 1921, and $567.57 plus $22.97 interest for 1922. The court below upheld the tax and definitely ruled that it was not repugnant to the Fourteenth Amendment or the Commerce Clause of the federal Constitution. 244 Mass. 530;

248 Mass. 156.   With negligible exceptions the assessments followed the Corporation Tax Law (Gen. Acts 1919, c. 355), now codified in Gen. Laws, c. 63.   Chapters 361 and 493, Gen. Acts 1921, are subsidiary and demand no particular notice.   Record No. 327 discloses how the assessments were calculated; also the essential facts hereinafter stated.   The opinion in No. 103 discusses the fundamental questions of law; the later one is supplementary and explanatory.

The statute provides that "every foreign corporation shall pay annually, with respect to the carrying on or doing of business by it within the Commonwealth, an excise equal to the sum of . . . five dollars per thousand upon the value of the corporate excess employed by it within the Commonwealth" and "two and one-half per cent. of that part of its net income . . . which is derived from business carried on within the Commonwealth;" provided that the total tax shall be not less than an amount equal to one-twentieth of one per cent. of such proportion of the fair cash value of its capital stock as its assets employed within the State shall bear to the total assets.   Annual returns, and additional information when demanded, must be filed with the Commissioner.   He is empowered to determine, under prescribed rules, the net portion of income from business within the State.   But if dissatisfied any corporation may file "a statement in such detail as the Commissioner shall require, showing the amount of its annual net income derived from business carried on within the Commonwealth."   Credit for five per cent. of dividends paid to inhabitants of the State is authorized.   Pertinent portions of the general statute are in the margin.*

* "Section 39. Every foreign corporation shall pay annually, with respect to the carrying on or doing of business by it within the commonwealth, an excise equal to the sum of the following, pro-

We accept the following statements in the opinion below: "The petitioner is a corporation organized under the laws of New Jersey. Its business is the manufacture and sale of cement. Its principal office is at Easton, Pennsylvania. Its mills are located in several other States outside of Massachusetts, from which shipments are made to various parts of the United States and to foreign countries. It maintains an office in Boston in charge of a district sales manager, with a clerk, where its correspondence and other natural business activities in connection with the receipt of orders and shipments of goods for the New England States are conducted. The

vided that every such corporation shall pay annually a total excise not less in amount than one twentieth of one per cent of such proportion of the fair cash value of all the shares constituting its capital stock as the assets, both real and personal, employed in any business within the commonwealth on April first following the close of the taxable year, bear to the total assets of the corporation employed in business on said date:

" (1) An amount equal to five dollars per thousand upon the value of the corporate excess employed by it within the commonwealth.

" (2) An amount equal to two and one half per cent of that part of its net income, as defined in section thirty and in this section, which is derived from business carried on within the commonwealth. . . ."

" Section 30. . . . ' Corporate excess employed within the commonwealth ' by a foreign corporation, [shall mean] such proportion of the fair cash value of all the shares constituting the capital stock on the first day of April when the return called for by section thirty-five is due as the value of the assets, both real and personal, employed in any business within the commonwealth on that date, bears to the value of the total assets of the corporation on said date. . . .

" ' Net income,' . . . [shall mean] the net income for the taxable year as required to be returned by the corporation to the federal government under the federal revenue act of nineteen hundred and eighteen," less interest on obligations of the United States.

" Section 41. The commissioner shall determine in the manner provided in this section the part of the net income of a foreign corpora-

office is used as headquarters for travelling salesmen, who solicit orders in Massachusetts and the other New England States. Orders so taken are transmitted at the Boston office by mail to the principal office at Easton, Pennsylvania, where exclusively they are passed upon, and if accepted, the goods are shipped and invoices sent directly to the customer. Remittances usually are made to the petitioner at Easton, though in exceptional instances prepayments or collections are made by the salesmen and immediately transmitted to Easton. No samples or other merchandise are kept in this Commonwealth.

---

tion derived from business carried on within the commonwealth. . . . The net income as defined in section thirty [less certain credits not here involved] shall be allocated as follows: If a foreign business corporation carries on no business outside, this commonwealth, the whole of said remainder shall be allocated to this commonwealth. If a foreign business corporation carries on any business outside this commonwealth, the net income taxable under this chapter shall be determined as provided in section thirty-eight."

" Section 38. . . . 2. If the corporation carries on any business outside the commonwealth, the said remainder shall be divided into three equal parts:

"(a) Of one third, such portion shall be attributed to business carried on within the commonwealth as shall be found by multiplying said third by a fraction whose numerator is the value of the corporation's tangible property situated within the commonwealth and whose denominator is the value of all the corporation's tangible property wherever situated.

"(b) Of another third, such portion shall be attributed to business carried on within the commonwealth as shall be found by multiplying said third by a fraction whose numerator is the expenditure of the corporation for wages, salaries, commissions or other compensation to its employees, and assignable to this commonwealth as hereinafter provided, and whose denominator is the total expenditure of the corporation for wages, salaries, commissions or other compensation to all its employees.

"(c) Of the remaining third, such portion shall be attributed to business carried on within the commonwealth as shall be found

55627°—25——14

The only property of the petitioner in Massachusetts is its office furniture, valued at $573. It maintains no bank account here, its salaries and office rent being paid from its principal office. Incidental expenses are paid from an account not exceeding $1,000 kept by the district sales manager in his own name. No corporate books, records, or meetings are in Massachusetts. There is no con-. troversy as to the facts, valuations or computation of the tax. The issues between the parties relate solely to the correct interpretation of our corporate tax law as to foreign corporations and to the constitutionality of that

by multiplying said third by a fraction whose numerator is the amount of the corporation's gross receipts from business assignable to this commonwealth as hereinafter provided, and whose denominator is the amount of the corporation's gross receipts from all its business.

"3. In a case where only two of the foregoing three rules are applicable, the said remainder of net income of the corporation shall be divided into two equal parts only, each of which shall be apportioned in accordance with one of the remaining two rules. If only one of the three rules is applicable, the part of the net income received from business carried on within the commonwealth shall be determined solely by that rule.

"4. The value of the corporation's tangible property for the purposes of this section shall be the average value of such property during the taxable year.

"5. The amount assignable to this commonwealth of expenditure of the corporation for wages, salaries, commissions or other compensation to its employees shall be such expenditure for the taxable year as represents the compensation of employees not chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside the commonwealth.

"6. The amount of the corporation's gross receipts from business assignable to this commonwealth shall be the amount of its gross receipts for the taxable year from (a) sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside the

law in its application to the petitioner. . . . It is rightly conceded by the Attorney General that the petitioner was engaged in this Commonwealth exclusively in interstate commerce."

Having ascertained the necessary items, the Comptroller made the calculations indicated below. The corporation's total net income returned for federal taxation, after allowances, amounted to $707,577.98; $7,602,090.21 (although not quite accurate) was treated as the total value of intangible assets.

commonwealth and sales otherwise determined by the commissioner to be attributable to the business conducted on such premises, (b) rentals or royalties from property situated, or from the use of patents, within the commonwealth; provided, that upon application by a corporation which owns or controls substantially all the capital stock of another corporation, or by the corporation so owned or controlled, the commissioner may impose the tax provided for by this chapter upon the income of the two corporations jointly in the same manner as though they were a single corporation, or may, in such other manner as he shall determine, equitably adjust the tax of the applying corporation. . . .

"9. A rule shall not be deemed to be inapplicable merely because all the tangible property or the expenditure of a corporation for wages, salaries, commissions or other compensation, or the gross receipts of the corporation, are found to be situated, incurred, or received without the commonwealth."

"Section 75. In addition to the methods provided by sections seventy-two and seventy-three [distraint or action in contract], taxes under this chapter, except section sixty-two [not here involved], may be collected by an information brought in the Supreme Judicial Court by the attorney general at the relation of the state treasurer. The Court may issue an injunction upon such information, restraining the further prosecution of the business of the company, association or corporation until such taxes, with interest and costs thereon, have been paid; but no telegraph company accepting the provisions of section fifty-two hundred and sixty-three of the Revised Statutes of the United States shall be enjoined from constructing, maintaining or operating a telegraph line over and along any of the military or post roads of the United States within this commonwealth."

*Amount of tax measured by net income.*

Average value of tangible property in Mass., $573. Divide this by average value all tangible property, $16,992,355.22; multiply resulting fraction by $235,859.33 (⅓ of $707,577.98, *supra*)..................................= $8.02

Wages, salaries, etc., assignable to Mass., $11,493.38. Divide this by amount of all wages, salaries, etc., $1,650,614.73; multiply resulting fraction by $235,859.33 (⅓ of $707,577.98, *supra*).........................=1,642.29

Gross receipts assignable to Mass., $343,204.60. Divide this by gross receipts from all business, $10,717,546.43; multiply resulting fraction by $235,859.33 (⅓ of $707,577.98, *supra*)...............................=7,552.22

Net income........................... $9,202.53
2½% of $9,202.53............... $230.06
Less 5% of dividends paid Mass.
    inhabitants ..................    42.15

Total according to income............    $187.91

*Amount of tax measured by corporate excess.*

Income assigned to Massachusetts, as above shown, $9,202.53. Divide this by $707,577.98 (entire apportionable net income); multiply resulting fraction by $7,602,090.21 (used for total intangible assets). This yields $98,827.17, which was taken as the value of intangible assets assignable to Massachusetts. The tangible assets, $573, were added and $99,400 became the total accepted value of assets assignable to the State.

Cash value of the company's capital stock was fixed at $16,352,162; all assets $21,406,098. Divide $99,400 by

$21,406,098; multiply resulting fraction by $16,352,162; the result is $75,932.08—the "corporate excess." Five dollars per thousand upon this is $379.66.

Total Assessment for 1922 ($187.91 plus $379.66), $567.57.

In the course of its opinion the court below said—

"This tax law, placing as it does both domestic and foreign corporations on common ground as to taxation except so far as essential differences require different treatment in details, follows the policy established in this Commonwealth for many years of levying an excise instead of a property tax on corporate franchises and corporate transaction of business. *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523.

"The general scheme of this tax law is that an excise is levied on both domestic and foreign business corporations doing business in this Commonwealth. Real estate and machinery used in manufacture by such corporations alone are subject to a local property tax in the city or town where situated. All other personal property, whether tangible or intangible, is exempt from direct or local taxation. The amount of the excise tax is measured as to a foreign corporation, § 39, by the sum of 'An amount equal to five dollars per thousand upon the value of the corporate excess employed by it within the Commonwealth,' and 'An amount equal to two and one half per cent of that part of its net income, as defined in section thirty and in this section, which is derived from business carried on within this Commonwealth,' with a further provision that a minimum tax [shall be paid] of not less than one twentieth of one per cent of such proportion of the fair cash value of its shares of capital stock as its assets employed in business in this Commonwealth bear to its total assets employed in business. . . ."

"The statute is an attempt to measure the excise on foreign corporations solely by the property and net income fairly attributable to the business done within this Commonwealth. This excise tax is in place of any other tax on personal property within the Commonwealth from which, except as to machinery used in manufacture or in supplying and distributing water, foreign corporations (and also domestic corporations) are expressly exempted by G. L. c. 59, § 5, cl. 16. . . .

"The present tax act imposes the excise with respect to the carrying on of business by foreign corporations within the Commonwealth. It is an excise for the privilege of having a place of business under the protection of our laws and with the financial, commercial and other advantages flowing therefrom, measured solely by the property and net income fairly attributable to the business done here by a foreign corporation. The excise is measured by two factors, (1) the value of the corporate excess employed within the Commonwealth, and (2) the net income derived from business within the Commonwealth.

"1. The value of the corporate excess employed in the Commonwealth as a factor of the tax is not measured by the capital stock of the corporation. If it were, it would be invalid. *International Paper Co. v. Massachusetts,* 246 U. S. 135. It is measured by the value of the property of the foreign corporation, including its franchise, employed in the Commonwealth, after certain deductions are made. It seems to us that this factor of the tax stands under the protection of several decisions of the Supreme Court of the United States. . . . .

"It is manifest as matter of common business knowledge that commerce within this Commonwealth yielding to the petitioner annual gross receipts of $424,982.70 must have involved credits, bills receivable and obligations to it of considerable amounts. No contention to the con-

trary has been urged by the petitioner. Such credits, bills receivable and obligations might be made subject to direct taxation within the Commonwealth by appropriate legislation under numerous decisions of the United States Supreme Court. Such credits, bills receivable and obligations constitute a part of ' the value of the assets' of the petitioner ' employed in . . . [its] business within the Commonwealth ' used as the basis of ascertaining ' the corporate excess' of the petitioner ' employed within the Commonwealth ' upon which this factor of the excise is calculated. . . .

" 2. The tax, as measured by the net income from business transacted in Massachusetts as a factor, is dependent upon net profits derived solely from interstate commerce. But there is no discrimination in the statute against interstate commerce. This net income is used as a measure applicable to all corporations alike. While not an income tax according to strict definition, in substance it affects net income alone, is measured by net income alone, is reasonable in amount and incidence, and is payable out of net income. . . .

" The tax considered as a whole with both its main factors is general in nature and reasonable in amount. The tax upon the petitioner in substance and effect, so far as concerns the factor of its corporate excess employed within the Commonwealth, is levied upon its tangible personal property within the Commonwealth, upon the credits due it from debtors within this Commonwealth, and upon the exercise of its franchise within this Commonwealth, and, so far as concerns the factor of its income, upon the net income derived from business in this Commonwealth after all losses and expenses have been paid. It is not directed against interstate commerce or property outside the State but is confined to business done, property located, capital employed and net income earned within the Commonwealth. It affects interstate

commerce indirectly and is not an immediate burden upon it. It affords to the State only a fair and reasonable revenue for the maintenance of the government, the benefits from the protection of which the petitioner enjoys. Our conclusion is that the law thus construed, as applying to a foreign corporation using a part of its property exclusively for interstate commerce within the Commonwealth, violates no guaranty established by the Constitution of the United States. The tax statute, therefore, is interpreted as applying to a corporation engaged in business within the Commonwealth as is the petitioner."

Counsel for the Commonwealth assert: "The present tax law imposes an excise on foreign corporations for the privilege of doing business in Massachusetts under the protection of its laws and with the financial, commercial and other advantages flowing therefrom, measured solely by the property and net income fairly attributable to the business done within the State. Payment of the tax is not made a condition precedent to the doing of business. Collection of the tax is to be made by ordinary methods. There is no discrimination either against foreign corporations or against interstate commerce." "The taxes complained of were excises and not property taxes." "Being excises these taxes are not taxes *on* property or net income, but taxes *measured by* property and net income, used in or derived from business done in Massachusetts." See *Judson Freight Forwarding Co.* v. *Commonwealth,* 242 Mass. 47.

This view of the nature of the exaction was adopted by the court below, and we think it is the correct one. The right to lay taxes on tangible property or on income is not involved; and the inquiry comes to this: May a State impose upon a foreign corporation which transacts only interstate business within her borders an excise tax measured by a combination of two factors—the proportion of the total value of capital shares attributed to

transactions therein, and the proportion of net income attributed to such transactions?

*Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147, 153, 154, necessitates a negative reply. Under St. 1909, c. 490, Part III, § 56, the State demanded an excise of a foreign corporation which transacted therein only interstate business. The excise was laid upon the corporation and the basis of it the same as in the present cause. This court said: " We think the tax on this company was essentially a tax on doing an interstate business and therefore repugnant to the commerce clause." Here also the excise was demanded on account of interstate business. A new method for measuring the tax had been prescribed, but that cannot save the exaction. Any such excise burdens interstate commerce and is therefore invalid without regard to measure or amount. *Looney* v. *Crane,* 245 U. S. 178, 190; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, 142; *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245, 259; *Texas Transport & Terminal Co.* v. *New Orleans,* 264 U. S. 150.

*International Paper Co.* v. *Massachusetts* considered an excise upon a corporation doing both local and interstate business, measured by its capital stock. St. 1909, c. 490; St. 1914, c. 724. Pertinent cases were cited and discussed and the tax declared " unconstitutional and void as placing a prohibited burden on interstate commerce and laid on property of a foreign corporation located and used beyond the jurisdiction of the State." Payment as a condition precedent to the doing of any business was not a controlling circumstance. The opinion recognizes the State's right to demand excises of foreign corporations in respect of intrastate business unless the exaction is really a tax on interstate business or property beyond the State. Under this principle certain of the complaining corporations in *Cheney Brothers Co.* v. *Massachusetts, supra,* were properly taxed. Plaintiff in

error did no local business, and there was no proper foundation for the excise.

It must now be regarded as settled that a State may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the Commerce Clause; and the Fourteenth Amendment does not permit taxation of property beyond the State's jurisdiction. The amount demanded is unimportant when there is no legitimate basis for the tax. So far as. the language of *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 87, tends to support a different view it conflicts with conclusions reached in later opinions and is now definitely disapproved.

*Union Tank Line Co.* v. *Wright,* 249 U. S. 275, 282, *et seq.,* pointed out the limitations which must be observed when property used in interstate commerce is valued for purposes of taxation by a State. We there declined to follow the rule applied in *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 26, and held that determination of real value with fair accuracy is essential. Many methods adapted to that end have been accepted, but this does not tend to support an excise laid upon a foreign corporation on account of interstate transactions.

The local business of a foreign corporation may support an excise measured in any reasonable way, if neither interstate commerce nor property beyond the State is taxed. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, approved such an excise measured by income reasonably attributed to intrastate business; but nothing there said was intended to modify well established principles. It must be read with the essential facts in mind. Local business was a sufficient basis for the excise, and there was no taxation of interstate commerce or property beyond the State. Of course, the opinion does not support the suggestion that the present statute is free from

the fatal objections to the former one because payment of the tax is no longer a condition precedent to carrying on any business.   It cites approvingly *St. Louis S. W. Ry.* v. *Arkansas,* 235 U. S. 350, 364; and there this court said—

"So far as the commerce clause is concerned, it seems to us that the principles upon whose application the present decision must depend are those set forth in *Postal Tel. Cable Co.* v. *Adams,* 155 U. S. 688, 695, where the court, by Mr. Chief Justice Fuller, said: 'It is settled that where by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained.   But property in a State belonging to a corporation, whether foreign or domestic, engaged in foreign or interstate commerce, may be taxed, or a tax may be imposed on the corporation on account of its property within a State, and may take the form of a tax for the privilege of exercising its franchises within the State, if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State (the exaction, therefore, not being susceptible of exceeding the sum which might be leviable directly thereon), and if payment be not made a condition precedent to the right to carry on the business, but its enforcement left to the ordinary means devised for the collection of taxes.'"

The excise challenged by plaintiff in error is not materially different from the one declared unconstitutional in *Cheney Brothers Co.* v. *Massachusetts,* and cannot be enforced against a foreign corporation which does nothing but interstate business within the State.   The introduction of an extremely complicated method for calculating the amount of the exaction does not change its nature or mitigate the burden.

The decrees of the court below must be reversed and the causes remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE BRANDEIS dissents.