MEMPHIS NATURAL GAS CO. *v.* BEELER,
ATTORNEY GENERAL OF TENNESSEE, ET AL.

No. 499.   Argued March 6, 1942.—Decided March 30, 1942.

*Mr. Walter P. Armstrong*, with whom *Mr. T. A. Mc-Eachern, Jr.* was on the brief, for appellant.

*Messrs. Whitworth Stokes* and *Lewis S. Pope*, with whom *Messrs. Roy H. Beeler*, Attorney General of Tennessee, and *W. F. Barry*, Assistant Attorney General, were on the brief, for appellees.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The question for decision is whether a tax laid pursuant to §§ 1316–1318 of the Tennessee Code of 1932 upon the Memphis Natural Gas Company's net income derived from sales of natural gas in Tennessee, during the years 1932 to 1935, violates the commerce clause.

The case comes here by appeal from a judgment of the Supreme Court of Tennessee, which sustained the tax and reversed a decree of the Tennessee chancery court enjoining its collection. Appellant contends that the case is properly an appeal, under § 237 (a) of the Judicial Code as amended, 28 U. S. C. § 344 (a), because the validity of the Tennessee statute as applied to the facts of this case has been drawn in question. Cf. *Dahnke-Walker Co. v. Bondurant*, 257 U. S. 282. But appellant's bill of complaint, filed in the chancery court, alleged only that the assessment of the tax and the threatened levy violated its rights under the commerce clause. Our decisions have long since established that an attack upon a tax assessment or levy, on the ground that it infringes a taxpayer's federal rights, privileges or immunities, will not sustain an appeal under § 237 (a). *Jett Bros. Distilling Co. v. City of Carrollton*, 252 U. S. 1; *Miller v. City of Denver*, 290 U. S. 586; *Baltimore National Bank v. State Tax Comm'n*, 296 U. S. 538; *Irvine v. Spaeth*, 314 U. S. 575. It is not enough that an appellant could have launched his attack upon the validity of the statute itself as applied; if he has

failed to do so we are without jurisdiction over the appeal. The Judicial Code was intended to restrict our obligatory appellate jurisdiction to a narrow class of cases, and to foreclose an appeal as of right whenever the prescribed conditions have not been rigorously fulfilled.

It is true that when this case reached the Supreme Court of Tennessee the appellant included in its brief, which has been certified as part of the record here, a statement of its legal position which might serve as a challenge to the validity of the statute. But appellant has failed to establish that under Tennessee practice such a contention can be availed of if advanced for the first time in the appellate court, cf. *Pennsylvania R. Co.* v. *Illinois Brick Co.*, 297 U. S. 447, 462–63; *Jacobi* v. *Alabama*, 187 U. S. 133, 135–36; *Mutual Life Ins. Co.* v. *McGrew*, 188 U. S. 291, and appellant's burden is to show affirmatively that we have jurisdiction. *Chicago, I. & L. Ry. Co.* v. *McGuire*, 196 U. S. 128, 132; cf. *Lynch* v. *New York*, 293 U. S. 52, 54–55; *Enriquez* v. *Enriquez (No. 2)*, 222 U. S. 127, 130; *Brady* v. *Terminal Railroad Assn.*, 302 U. S. 678.

The first opinion rendered by the Supreme Court of Tennessee made no mention of any federal question, and in a supplemental opinion the court stated only that "the claim of federally protected right was decided adversely to complainant." Since it does not appear that the validity of the statute was either drawn in question or passed upon in the trial court or deemed by the state supreme court to be in issue, we must dismiss the appeal for want of jurisdiction. Treating the papers on which the appeal was allowed as a petition for writ of certiorari, as required by § 237(c) of the Judicial Code as amended, 28 U. S. C. § 344(c), certiorari is granted, and we proceed to consider the merits of the case.

Taxpayer, a Delaware corporation, was engaged during the period in question in the business of purchasing natural gas in Louisiana and transporting it through its

pipeline to points in Tennessee where it delivered the gas into the pipelines of two distributing companies—Memphis Power & Light Co. and West Tennessee Power & Light Co.—which sold the gas to local consumers. Taxpayer sells some of its gas in other states, but in Tennessee it sells from 1 to 2% of its output to the West Tennessee Power & Light Co. and delivers 80% or more to the Memphis company. That company distributes it to consumers under a contract with taxpayer which the Supreme Court of Tennessee has found to be a joint undertaking of the two companies whereby taxpayer furnishes gas from its pipeline, the Memphis company furnishes facilities and service for distribution and sale to consumers, and the proceeds of the sale, after deduction of specified costs and expenses, are divided between the two companies.

Taxpayer is licensed by the State of Tennessee to do business there. It maintains a statutory office in Delaware and a stock transfer office in New York City, but . conducts no business at either. It manages its business from its office in Memphis, Tennessee, where it keeps its accounts, provides for the payroll of employees on its line in Tennessee and other states, and prepares and sends out bills for gas delivered in Tennessee and other states. It has thus established a commercial domicile in Tennessee by virtue of which it is subject to taxation there upon its intangibles, unless such taxation infringes the commerce clause. *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193.

Section 1316 of the Tennessee Code of 1932 imposes on all foreign and domestic corporations doing business for profit in the state an annual excise tax of "three per cent. of the net earnings for their preceding fiscal year . . . arising from business done wholly within the state, excluding earnings arising from interstate commerce." The Supreme Court of Tennessee sustained the tax on the ground

that it was laid on appellant's net earnings from the distribution of gas under its contract with the Memphis company, which distribution it held not to be interstate commerce within the meaning of the statute. It decided that, by virtue of their contract, the companies became in effect partners or joint enterprisers in the distribution and sale of the gas to Tennessee consumers, the net earnings from which are taxable under the statute.

On petition for rehearing, taxpayer asked a modification of the decree on the ground that, included in the measure of the tax were profits derived from sales of gas to the West Tennessee Power & Light Co., and from certain other sales to the Memphis company, not under the joint adventure agreement, which it was insisted were concededly sales in interstate commerce. The court rejected this contention upon the adequate state ground, not challenged here, that taxpayer had failed to show what portion, if any, of the taxed profits was derived from such sales and consequently had laid no basis for an injunction restraining collection of that part of the tax.

This Court has often had occasion to rule that the retail sale of gas at the burner tips by one who pipes the gas into the state, or by a local distributor acquiring the gas from another who has similarly brought it into the state, is subject to state taxation and regulation. *Public Utilities Comm'n* v. *Landon,* 249 U. S. 236; *East Ohio Gas Co.* v. *Tax Comm'n,* 283 U. S. 465; *Southern Gas Corp.* v. *Alabama,* 301 U. S. 148, 154; cf. *Missouri* v. *Kansas Gas Co.,* 265 U. S. 298, 309; *Illinois Natural Gas Co.* v. *Central Illinois Public Service Co.,* 314 U. S. 498. It follows that if the Supreme Court of Tennessee correctly construed taxpayer's contract with the Memphis company as establishing a profit-sharing joint adventure in the distribution of gas to Tennessee consumers, the

taxpayer's net earnings under the contract were subject to local taxation.

The meaning and effect of the contract, so far as they establish taxpayer's participation in and ownership of profits derived from the retail sale of the gas, are local questions conclusively settled by the decision of the state court save only as this Court, in the performance of its duty to safeguard an asserted constitutional right, may inquire whether the decision of the state question rests upon a fair or substantial basis. See *Broad River Co.* v. *South Carolina,* 281 U. S. 537, and cases cited. We examine the contract only to make certain that the non-federal ground of decision is not so colorable or unsubstantial as to be in effect an evasion of the constitutional issue.

The contract was entered into as a preliminary to the award by the City of Memphis to the Memphis company of its franchise to distribute gas to consumers, and execution of the contract was a condition of the grant of the franchise. By the contract, the Memphis company undertook to establish its distribution system. Taxpayer undertook to construct its pipeline with facilities, including measuring stations at a delivery point, for supplying the Memphis company with a varying flow of gas into the service pipes as and when required by the Memphis company for consumer needs. The amount so furnished, less certain deductions covered by a separate contract not now material, was to be divided into five classes, according to the use made of the gas by consumers, and was to be billed by taxpayer to the Memphis company at five different specified rates. The amount of gas allocated to each class was to be in proportion to the amount of that class of gas sold by the Memphis company for like use during the preceding month.

At the end of each year the combined net surplus or deficit of the two companies was to be divided between

them by a cash settlement. The surplus or deficit of each was to be arrived at by deducting from its gross revenues the operating costs, costs of property restorations and replacements, taxes, amortization of investment, and 6% upon investment. After all net deficits of both parties had been made up and the Memphis company had received from the combined net surpluses $1\frac{1}{2}$% of its total investment annually, any additional combined net income was to be paid to or retained by taxpayer.

The contract provided for readjustment from time to time of the billing price of the gas supplied by taxpayer, so as to admit of reduction in the rates to consumers, after first allowing "a reasonable return" on taxpayer's investment. The contract contains the usual provisions for inspection of books by the parties and the city, and a clause requiring all notices to be given to taxpayer at its Memphis office.

The Supreme Court of Tennessee held that the city was a party to the contract entitled to the benefits of its provisions for rate reductions. It held that the circumstance that taxpayer and the Memphis company were designated by the contract as "seller" and "buyer" did not alter or obscure the fact that taxpayer was a participant in the profits derived from the joint undertaking, and that the precise time when the title to the gas passed, if it passed before distribution to consumers, was immaterial. In any case, it thought that the tentative amounts to be paid by the Memphis company for the gas in the first instance were to be determined after delivery by the use made of it by consumers.

We cannot say that there is not a substantial basis for the state court's conclusion that in substance the contract called for the contribution of the services and facilities of the companies to a joint enterprise, the taxpayer's delivery of gas into the mains of the Memphis company for distribution to consumers, and a division between the

two companies of the operating profits after providing for certain agreed initial costs and expenses. Nor can we say that by this participation the taxpayer did not do such a business in the state as to be taxable there, or that the profits derived from it are not an appropriate measure of the tax.

Taxpayer's contribution to the joint undertaking with the Memphis company for the distribution of gas to local consumers, and its activities at its Memphis general office in supplying gas to be distributed for the joint account as required by the Memphis company and in safeguarding and securing payment of its share of the profits, went beyond the mere sale, to a distributor, of gas in interstate commerce. It also constituted participation in the business of distributing the gas to consumers after its delivery into the service pipes of the Memphis company. *Cheney Bros. Co.* v. *Massachusetts,* 246 U. S. 147, 155–56; *Atlantic Lumber Co.* v. *Commissioner,* 298 U. S. 553; *Southern Gas Corp.* v. *Alabama, supra.* Since it was competent for the state to tax such business done within it, it was competent to measure the tax by the net earnings of the business as well as by the capital employed. See *Southern Gas Corp.* v. *Alabama, supra,* 156–57.

In any case, even if taxpayer's business were wholly interstate commerce, a nondiscriminatory tax by Tennessee upon the net income of a foreign corporation having a commercial domicile there, cf. *Wheeling Steel Corp.* v. *Fox, supra,* or upon net income derived from within the state, *Shaffer* v. *Carter,* 252 U. S. 37, 57; *Wisconsin* v. *Minnesota Mining Co.,* 311 U. S. 452; cf. *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308, is not prohibited by the commerce clause on which alone taxpayer relies. *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 119–20; cf. *Bass, Ratcliff & Gretton, Ltd.* v. *Tax Comm'n,* 266 U. S. 271;

*Western Live Stock* v. *Bureau,* 303 U. S. 250, 255. There is no contention or showing here that the tax assessed is not upon net earnings justly attributable to Tennessee. *Underwood Typewriter Co.* v. *Chamberlain, supra;* cf. *Bass, Ratcliff & Gretton, Ltd.* v. *Tax Comm'n, supra; Butler Bros.* v. *McColgan, ante,* p. 501. It does not appear that upon any theory the tax can be deemed to infringe the commerce clause.

Appeal dismissed for want of jurisdiction. Certiorari granted and judgment affirmed.

*Affirmed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.