**SPECTOR MOTOR SERVICE, Inc. v.
O'CONNOR, Tax Commissioner.**

**No. 180, Docket 21557.**

United States Court of Appeals,
Second Circuit.

Argued March 7, 1950.

Decided March 29, 1950.

Swan, Circuit Judge, dissented.

See also D.C., 47 F.Supp. 671, 2 Cir., 139 F.2d 809, and 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101.

Cyril Coleman, of Hartford, Conn. (Day, Berry & Howard, of Hartford, Conn., on the brief), for plaintiff-appellee.

Frank W. Flood, Asst. Atty. Gen., State of Conn. (William L. Hadden, Atty. Gen., State of Conn., on the brief), for defendant-appellant.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This case has had a long and circuitous history in both the federal and the state courts. It concerns the power of the State of Connecticut to collect a tax computed on net income apportioned to state business of an interstate trucking concern engaged in collecting freight within the State and transporting it by truck to Chicago and St. Louis. The tax assessments involved are for the years 1936 through 1940 and amount to a total of $6,122.77, plus a 25 per cent penalty and interest. Authority for the tax was found by the Tax Commissioner in the Corporation Business Tax Act of 1935, Cum.Supp. 1935, c. 66b, § 416c et seq., as amended, Supp.1949, c. 91, § 195a et seq. This action for an injunction and a declaratory judgment of nonliability to the tax, brought by a Missouri corporation engaged exclusively in interstate trucking against the Commissioner, was begun on March 9, 1942. Obviously principle here has been more important than the amount of revenue immediately forthcoming; but to the thirty or more states which have adopted this form of statute developed by the National Tax Association and which are said to be awaiting the outcome of this case,[1] the answer has not been swiftly forthcoming.

After the initial trial, the plaintiff on November 14, 1942, obtained a ruling from the district court that it was entitled to an injunction against the collection of the tax and a declaration that plaintiff was not subject to it. This was based upon the court's conclusion that if the tax were applicable to plaintiff it must be held invalid as a burden on interstate commerce, in violation of Art. I, § 8, of the Constitution of the United States, and that to avoid such a holding it should be construed as inapplicable. Spector Motor Service, Inc. .v. McLaughlin,

---

1. See 96 U. of Pa.L.Rev. 274 n. 1, and the Report of the Connecticut Temporary Commission to Study the Tax Laws, 1934, cited in our earlier decision and in that of the state court.

D.C.Conn., 47 F.Supp. 671. On appeal from the judgment and declaration thus entered, we reversed, holding the tax applicable to plaintiff and valid as not burdensome to interstate commerce. Spector Motor Service, Inc., v. Walsh, 2 Cir., 1943, 139 F.2d 809. The Supreme Court granted certiorari, 322 U.S. 720, 64 S.Ct. 1155, 88 L.Ed. 1560, and held that the federal courts should defer determination of the constitutionality of the state tax until the state courts had an opportunity to determine the application and constitutionality of the tax as applied to plaintiff under local law. Accordingly it remanded the cause to the district court with directions to retain the bill pending the determination of proceedings to be brought in the state court to settle the issues of local law. Spector Motor Service, Inc. v. McLaughlin, 1944, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101.

An action for a declaratory judgment was immediately instituted in the Superior Court of Connecticut, but did not go to judgment until August 1947, when that court held the tax applicable to plaintiff and an unconstitutional burden on interstate commerce. 15 Conn.Sup. 206. Upon appeal the Supreme Court of Errors of Connecticut held the tax clearly applicable to plaintiff and not in violation of the state constitution, but struck out the decision based on the federal constitution, holding that this question was already before the federal courts and that its answer was properly to be left to them. Spector Motor Service, Inc. v. Walsh, 135 Conn. 37, 61 A.2d 89. In February 1949 defendant moved in the district court for dissolution of the injunction, and last fall that court ruled that since the tax had been held to apply to plaintiff it must be held unconstitutional. This appeal is therefore from its refusal to dissolve the injunction.

The facts of this case are set forth in detail in our earlier opinion, 139 F.2d 809, a familiarity with which is assumed. For our present purposes we may quote this succinct statement by the distinguished Chief Justice of Connecticut: "The tax is then a tax or excise upon the franchise of corporations for the privilege of carrying on or doing business in the state, whether they be domestic or foreign. Stanley Works v. Hackett, 122 Conn. 547, 551, 190 A. 743. Net earnings are used merely for the purpose of determining the amount to be paid by each corporation, a measure which, by the application of the rate charged, was intended to impose upon each corporation a share of the general tax burden as nearly as possible equivalent to that borne by other wealth in the state." 135 Conn. 37, 61 A.2d 89, 98. As will be seen, the terms here used become of some importance in the discussion. It is to be noted, however, that, as the court is at pains to point out, the tax is not upon income as such, not even local net income; but special and ingenious provisions for the allocation of income are employed in a conscious endeavor to equate the tax fairly between local and nonlocal activities. Thus in the case of income from the use of tangible real or personal property an allocation fraction for the net income is found as the mean or average of three ratios: that of tangible property within the state to all tangible property of the taxpayer; that of wages and salaries paid within the state to all wages and salaries; and that of gross receipts assignable to the state to all gross receipts. How cautious is the impost is shown by the tax here assessed for 1940. Plaintiff's total receipts for that year were $1,723,510.65, of which $587,975.-59 arose in Connecticut; while its net income was $426,291.01. But application of the formula gave an allocation mean of .157508, resulting in an allocation to state business of $67,304.24 net income, with a 2 per cent tax thus amounting to $1,346.08. 139 F.2d 809, 812.

Before proceeding to the merits of the issue before us, we must consider the contention of the Tax Commissioner that the federal courts no longer have jurisdiction to decide this issue. 28 U.S.C.A. § 1340 provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." When we considered this case before, our independent examination confirmed the conclusion reached below and agreed to by both parties that this prohibi-

tion did not apply, since we found doubt as to the nature of a state remedy. 139 F.2d 809, 819–822. In this the Supreme Court specifically agreed, holding that the district court had jurisdiction to give whatever relief was appropriate, despite the statute, "because of the uncertainty surrounding the adequacy of the Connecticut remedy." 323 U.S. 101, 105, 106, 65 S.Ct. 152, 154, 89 L.Ed. 101. In our decision we were at pains to point out that the Connecticut Supreme Court of Errors had it within its power to clarify the situation; and this it has now done in its opinion in this case by pointing out the availability locally of an action for a declaratory judgment or an injunction. 135 Conn. 37, 61 A.2d 89, 92. Its action has led to the new contention of the defendant that plaintiff must now be dismissed to start all over in another tribunal.

We do not think that this present determination that Connecticut does offer a remedy ousts us of our jurisdiction. The Supreme Court held, per Mr. Justice Brandeis, in Dawson v. Kentucky Distilleries Co., 255 U.S. 288, 41 S.Ct. 272, 65 L.Ed. 638, that where no adequate state remedy could be clearly seen at the time an action was instituted in the federal courts, federal jurisdiction was not defeated by a subsequent opinion of the state supreme court pointing out an available remedy. See also American Life Ins. Co. v. Stewart, 300 U.S. 203, 215, 57 S.Ct. 377, 81 L.Ed. 605, 111 A.L.R. 1268. This is not to deny the possibility that the parties might have brought a swifter end to these overlengthy proceedings by petitioning for certiorari from the decision of the Connecticut Supreme Court of Errors. Indeed the refusal of that court to consider the federal question has been the subject of critical comment. 1 Stanford L. Rev. 551. But since that course was not taken and since the federal court had proper jurisdiction when this action was begun, we hold that it continues until a final determination of the important issue involved.

When we had this case before us six years ago we expressed the view that earlier decisions, of which Alpha Portland Cement Co. v. Commonwealth of Massachusetts, 268 U.S. 203, 45 S.Ct. 477, 69 L.Ed. 916, 44 A.L.R. 1219, was the principal authority, were against the validity of a state tax levied upon even net income of a corporation engaged solely in interstate commerce. But on examination of the broad trends in favor of the state-taxing power shown by the Supreme Court, we concluded that the Alpha Portland Cement case and its progeny were no longer controlling and that as of that date the validity of such a tax as this would be sustained. We are now called upon to re-examine our conclusions to see if, as indeed the learned trial judge thought, later developments show that we were in error.

■ Before embarking upon this task, we think it needful that we redefine what we conceive to be our functions as judges of a constitutionally inferior court; for it seems to have been thought in some quarters that our previous attempt to study doctrinal trends as to the fate of state taxation in interstate commerce was only an endeavor to guess the votes of Supreme Court justices. We certainly have no desire either to psychoanalyze or to Gallup-poll the Court and its newer members, nor do we conceive that to be greatly useful to it or to others. We recognize, too, that it would be futile and undignified not to yield obeisance to ancient precedents solely because we personally think they have outlived their usefulness; but it would be equally futile to press them upon the parties when they are no longer more than wraiths. It is our duty to discover if there exists a fairly debatable issue where the bonds of stare decisis are wearing thin, and, if we do, then to resolve it on reason and persuasion, not by any supposed count of noses. When this case was before us earlier, we thought we did discover such an issue. Events in the meantime tend to confirm us more strongly in that view: the later history of this very case, the learned comments about it, the recent precedents as we read them, indeed the very divisions in the Court on this vital issue. We recognize full well that it is not our province to terminate the dispute with finality; but we think we aid that end more by trying to act judicially than merely prophetically. The magnitude of the constitutional issue

here involved affecting the taxing economy of a majority of the states and having repercussions in the terms of the very union itself deserves such treatment and such treatment alone at our hands. So we shall set forth our analysis of the legal situation and our reasoned conclusions as to the controlling law without attempting to guess which justices or how many, if any, may agree with us.

■ Scholars who have analyzed the many cases in which during the last decade the Supreme Court has had to measure the conflicting claims of state-taxing power and the commerce clause tell us that two theories of drawing the line between these claims have been variously in vogue. Hellerstein, State Franchise Taxation of Interstate Businesses, 4 Tax L.Rev. 95, 1948; Dunham, Gross Receipts Taxes on Interstate Transactions, 47 Col.L.Rev. 211, 1947; Powell, More Ado About Gross Receipts Taxes, 60 Harv.L.Rev. 501, 710, 1947; Cahill, State Taxation of Interstate Commerce, 27 Ore.L.Rev. 97, 1948; Overton, State Taxation of Interstate Commerce, 19 Tenn.L.Rev. 870, 1947; Note, Gross Receipts Taxes: A Change in Doctrine, 56 Yale L.J. 898, 1947; Comment, 46 Mich.L. Rev. 50, 1947. These theories have been based upon the application of either the "multiple burdens" or the "direct-indirect" tests, so called. Under the multiple burdens test, only such state taxes on interstate business are invalid as are susceptible of being imposed with equal right by other states, so that interstate commerce is required to bear a heavier burden of taxation than is intrastate commerce. This test was stated in such cases as Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944; J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429; Gwin, White & Prince, Inc., v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272; McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876; its origins go all the way back to Case of the State Freight Tax, 15 Wall. 232, 280, 82 U.S. 232, 21 L.Ed. 146. A principal touchstone of taxability under these decisions is fair ap-

portionment of the tax. Where an allocation formula is employed which makes the amount of the tax commensurate with the receipts, the income, or the property of the taxpayer within the taxing state, the tax is held valid. This concern with a fair apportionment of a tax has been re-emphasized as lately as in Central Greyhound Lines of New York v. Mealey, 334 U.S. 653, 663, 68 S.Ct. 1260, 92 L.Ed. 1633, where the entire Court was in agreement that even a tax on gross income is to be upheld if it is justly apportioned. See Rec.Dec., 47 Mich. L.Rev. 576, 1949; Note, 17 U. of Cin.L.Rev. 378, 1948.

If the multiple burden test is today the criterion of taxability, then we think this Connecticut tax is surely valid. As we have noted, it shows great ingenuity in its provisions for allocating the taxpayer's net income so that Connecticut is taxing only the amount fairly attributable to this state. Thus not only is the unfairness of a tax on gross receipts avoided, but even the net income is apportioned only according to a standard set by a triple test of tangible property, wages and salaries, and gross receipts within the state as against the taxpayer's totals everywhere. By these careful provisions Connecticut ensures that even though every other state in which the taxpayer does business should impose a similar tax the taxpayer would not be suffering a multiple burden. The apportioned tax requires of a taxpayer merely that he pay his fair share of the costs of government of Connecticut, commensurate with the benefits which he receives from that government. "Even interstate business must pay its way." Postal Telegraph-Cable Co. v. City of Richmond, 249 U.S. 252, 259, 39 S.Ct. 265, 266, 63 L.Ed. 590; Western Live Stock v. Bureau of Revenue, supra, 303 U.S. 250, at page 254, 58 S.Ct. 546, 82 L.Ed. 823.

■ The other test, that a tax which directly burdens interstate commerce is invalid, while one which indirectly burdens such commerce can be supported, furnished the criterion for decisions in this field for many years. It has been recently enunciated in such cases as Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265, and

Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993. Under this test only can substantial question be raised as to the tax before us; but applying it also we conclude that the present tax is valid, since it is fundamentally a net income, rather than a gross receipts, tax. Indeed, the classic statement of the "direct-indirect" test is in United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, Ann.Cas. 1918E, 748, where a state tax measured by net income was held valid. Justice Pitney, for the Court, noted that a gross receipts tax is a direct burden on commerce, since it takes a share from every dollar of sales, regardless of whether the sale was profitable, and thus can make all the difference between profit and loss. A net income tax, however, does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. "Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the states are not exempted by the federal Constitution because they happen to be engaged in commerce among the states." Id. at 328–329, 38 S.Ct. 501, 62 L.Ed. 1135, Ann.Cas.1918E, 748; cf. Peck & Co. v. Lowe, 247 U.S. 165, 38 S.Ct. 432, 62 L.Ed. 1049.

A recent decision of the Supreme Court lends support to this analysis. In West Pub. Co. v. McColgan, 27 Cal.2d 705, 166 P.2d 861, the California supreme court upheld a net income tax on a publisher who shipped books into the state to fill orders. The United States Supreme Court affirmed this decision in a short *per curiam* opinion, 328 U.S. 823, 66 S.Ct. 1378, 90 L.Ed. 1603. The grounds for the decision are not clear; it is possible that the Court may have concluded that the activity of the publisher's salesmen within California was a taxable local incident, which could be considered apart from the sales themselves in interstate commerce. But the four cases which the Court cited as authority for its affirmance [2] make it seem even more possible—if indeed the facts of themselves do not—that the result followed the view that a net income tax, even on an exclusively interstate business, is an indirect burden on commerce and thus valid. One scholar has concluded that if such analysis is accurate "a properly apportioned net income tax as applied to exclusively interstate business would have easy sailing in the Court." Hellerstein, supra, 4 Tax L.Rev. 95, at 113.

In two quite recent cases, Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832, and Interstate Oil Pipe Line Co. v. Stone, 337 U.S. 662, 69 S.Ct. 1264, the Supreme Court has had occasion to pass on the validity of taxes on carriers engaged exclusively in interstate commerce. In view of the divisions within the Court, there is in neither case a majority opinion which can be relied upon as giving the rationale of the Court's decision; the significant fact nevertheless is that in both cases, for whatever reason and by whatever margin, the validity of the state tax was sustained. And it seems to us that the tax before us is a better and a fairer tax than either of the Mississippi taxes there upheld. The Memphis Natural Gas Co. case involved a franchise tax on corporations doing business within the state, measured as a percentage of the value of the capital used in the State. In the Interstate Oil Pipe Line Co. case the tax was a gross receipts tax; a rather crude apportionment was achieved by limiting the

2. United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135, Ann.Cas.1918E, 748; Interstate Busses Corp. v. Blodgett, 276 U.S. 245, 48 S.Ct. 230, 72 L.Ed. 551; Memphis Natural Gas Co. v. Beeler, 315 U.S. 649, 62 S.Ct. 857, 86 L.Ed. 1090; International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057.

tax to the receipts for transporting oil on pickup lines within the state into the main interstate pipe line.

The pickup oil lines in the Interstate Oil Pipe Line Co. case are no more state-taxing subjects than are the pickup trucks by which the taxpayer here assembles a load of freight from various shippers before sending a truck across the country. In such factual aspects the cases are closely parallel. But here we have a careful adjustment of net income and a careful rule of apportionment to the state making the amount of taxation so small that the state cannot be accused of unfairness. And while the tax in the Memphis Natural Gas Co. case was apportioned, the apportionment was solely on the basis of the capital involved, rather than by the more delicate and accurate formula involved in the Connecticut tax. It has been said of the Memphis case that it "completes the extension to state taxes on interstate transportation companies of the tolerance which the court has displayed toward state taxes on interstate sales." 62 Harv.L.Rev. 138; 47 Mich.L. Rev. 115, 117. Such tolerance seems well deserved in a case such as ours where there has been a careful attempt to do no more than ask interstate commerce to pay its way.

We should not be understood as claiming that the constitutionality of a tax should depend upon the name the legislature has given it. "We are concerned with the practical operation of challenged state tax statutes, not with their descriptive labels." Rutledge, J., in Interstate Oil Pipe Line Co. v. Stone, supra, 337 U.S. 662, at 666, 69 S.Ct. 1264, 1266. Hence we do not suggest that the tax is automatically constitutional merely because it is measured by net income, and a net income tax has been held to be an indirect burden. Rather we should look to the actual operation of the tax and decide whether it discriminates against interstate commerce, whether it is unduly burdensome to interstate commerce, wheth-er it attempts to reach activities outside the borders of the state, and whether it is susceptible of being repeated by any other state. If these questions are answered in the negative, if the tax is a fair and a just attempt to make all commerce, intrastate and interstate, bear its share of the costs of government, then the tax should be held valid.

Emphasis upon substance and a wariness as to labels is especially necessary as to a state tax termed an excise upon the privilege of doing business within the state. It is an easy slide from this to the thought that what is taxed is "the franchise to operate in interstate commerce," an "exaction for a privilege no state has power to grant" as even the learned trial judge here puts it. This we venture to suggest is a pervasion of the thought behind the label. What the state wants is no exaction for interstate operations, but a fair return for what the state gives.[3] The tax would certainly be the same under various other labels, such as a net income tax, a corporation business tax, or what not. The label as chosen seems obviously designed to express the purpose and the fair rationale behind the state's revenue program; it would be ironic were this to be held to defeat the tax as against, say, the cruder tax upheld in the Interstate Oil Pipe Line Co. case. If anything, the label here should be an aid, rather than a drawback, to its view in proper perspective.

The Connecticut tax here involved does not discriminate against interstate commerce. It is not burdensome to interstate commerce. It does not attempt to reach activities beyond the borders of Connecticut. It is not susceptible of being repeated by any other state. It is not a levy upon the privilege of engaging in interstate commerce. It is a proper and reasonable excise upon the privileges which Connecticut freely grants to all alike. Therefore we regard it as valid.

3. "Two State Commissioners are studying ways and means of making large out-of-state trucks pay for their wear and tear on Connecticut highways. Highway Commissioner G. Albert Hill disclosed the State's 'free ride' dilemma. He said he has discussed the situation with Motor Vehicles Commissioner Cornelius F. Mulvihill preparatory to making his recommendation to Governor Bowles." AP dispatch from Hartford to the New Haven Register, March 18, 1950.

■ We add that we see no reason to vary our previous conclusion that the tax does not violate the due process clause of the Fourteenth Amendment to the United States Constitution.

Reversed; judgment to be entered for defendant on the merits.

SWAN, Circuit Judge (dissenting).

In my opinion the order should be affirmed for the reasons stated by the district judge and by Judge LEARNED HAND in his dissent on the former appeal, 2 Cir., 139 F.2d 822–823.