**FIRST INDUSTRIAL PLAN, etc.,**
**Appellant,**

v.

**KENTUCKY BOARD OF TAX APPEALS,**
**etc., et al., Appellees.**

No. F–219–72.

Court of Appeals of Kentucky.

Sept. 28, 1973.

William E. Scent, Keith, Scent, Kirkham & Walton, Hopkinsville, for appellant.

William S. Riley, Director, Legal Staff, Kentucky Dept. of Revenue, Frankfort, for appellees.

Bernard B. Davis, Handmaker, Weber & Meyer, Louisville, for Union Trust, Inc. amicus curiae.

Carl K. Helman, Louisville, for Peoples Industrial Plan amicus curiae.

REED, Justice.

The appellant taxpayer, First Industrial Plan, asserts that the Kentucky Board of Tax Appeals erroneously held that the taxpayer was liable for payment of the tax on intangibles [1] imposed by KRS 132.020(1) rather than the tax imposed on bank shares by KRS 136.270 and KRS 136.280. The decision of the Board of Tax Appeals was upheld by the McCracken Circuit Court to which the taxpayer had appealed. Upon appeal from the circuit court's judgment to this court, the taxpayer insists that it should be regarded as a bank for purposes of state and county taxation on its intangibles and on its shares. We affirm the determination of the Board of Tax Appeals and the judgment of the circuit court for the reasons later stated.

The taxpayer is an industrial loan corporation organized in 1955 under KRS Chapter 291. Of the 226 industrial loan corporations in this state, 13, including the taxpayer, issued certificates of investment. The issuance of these certificates and the day-to-day operation of the business of lending money are the elements the taxpayer stresses in support of its contention that it should be treated as a bank for purposes of the types of taxation with which we are here concerned. The taxpayer cannot legally receive money on deposit, nor can it discount commercial paper.

The revenue officials assert that although the taxpayer's business may well resemble the operation of part of the usual business of a bank, insofar as the issuance of certificates of investment and the lending of money are concerned, this resemblance does not entitle it to be regarded as a bank under KRS 136.270 which imposes a tax on the shares of stock of state banks and trust companies. Banks receive more favored treatment than is afforded industrial loan companies in the taxation of intangibles. Banks, however, are subject to statutory requirements that are not im-

---

1. For example, stock, accounts receivable, notes, bonds, and money on hand.

posed upon industrial loan companies and from the observance of which the taxpayer is thereby freed.[2]

The taxpayer's principal contention is based upon reliance on a construction of the statutes made by the Department of Revenue from January of 1961 until January of 1969, during which period the 13 industrial loan companies, which issued certificates of investment, were afforded "bank" treatment for purposes of taxation. In early January 1970 the Commissioner of Revenue then in office notified the taxpayer that the Department of Revenue had concluded that its previous assessment as taxpayer as a bank institution had been improper. The Department further advised that it recognized the previous reports had been filed in good faith, but that henceforth the taxpayer would be treated as corporations generally and would be expected to list its intangibles for taxation with the local Property Valuation Administrator for 1970 and subsequent years under the provisions of KRS 132.-020(1). The Department of Revenue thereby undertook to withdraw the preferential tax treatment afforded a "bank" under KRS 136.270 and 136.280.

Although the term "bank" is not included in the list of definitions found in Chapter 446 or in Chapters 132 or 136 of the Kentucky Revised Statutes, it is defined in KRS 287.010(1)(a) as follows: "'Bank' includes every corporation authorized by this chapter to do a banking business. . . ." The taxpayer argues that the application of KRS 136.270 and KRS 132.-030 (both of which use the term "bank") is not limited to banks incorporated under KRS Chapter 287. This argument is necessarily premised on the existence of "doubts and ambiguities" concerning the meaning of the term as used in the several sections of the statutes cited. Proceeding from its premise, the taxpayer seeks appli-

cation of the doctrine of "contemporaneous construction" based on the Department of Revenue's nine-year practice of permitting certificates-of-investment-issuing industrial loan corporations to be treated as "banks" under KRS 136.270 and KRS 136.280.

■ It seems to us that the "contemporaneous construction" by administrative officials charged with enforcement of statutes is relevant only if the premise for its application is established. That is, the existence of such uncertainty of language in the legislative expressions that doubts and ambiguities may be fairly said to exist. It would appear that where statutory expressions are such that the language may indifferently apply to two things, a court may say there is sufficient doubt and ambiguity to look to extraneous circumstances, including "contemporaneous construction," as an aid in interpretation. It is also said that when the literal meaning of the language of a statute is absurd or unreasonable, resort to extrinsic facts is permissible in construing such statutory language. Where statutory language is capable of being understood by reasonably well-informed persons in two or more different senses, the construction given the language by the administrative authorities charged with its enforcement is relevant and often persuasive.

■ ■ Under any of the expressed tests for the determination of the existence of doubts and ambiguities in statutory language, we are unable to perceive ambiguities or doubts in the use of the term "bank" in Chapter 136 and Chapter 132 when read in connection with Chapter 287. We think it clear that these legislative expressions could not be stretched to create such favored status for the taxpayer as to require its treatment as a bank without obligation to observe the legal requirements exacted of banks and simultaneously cause it to receive more favored tax treatment as

---

2. KRS 287.080 requires that banks have paid in a surplus equal to fifty percent of the minimum capital required. The same statute in certain instances imposes a substantially higher capital stock minimum on banks than

is imposed on industrial loan companies. Other statutory requirements imposed upon banks and trust companies but not exacted from industrial loan companies could be cited.

an industrial loan company than is afforded all other industrial loan companies in the state except for 12 others out of a total of 226 in the business. In the context presented, we think it plain that the word "bank" as used in Chapter 132 means a bank organized under and subject to the express regulations of Chapter 287.

The determination of whether statutory language is doubtful and ambiguous is ultimately a judicial determination and is not a determination vested exclusively in administrative personnel. Since we construe the statutory language to be free of uncertainty, contemporaneous construction by administrative officials is immaterial in the instance presented by this case.[3] In view of the state of the record, it is unnecessary to consider other issues discussed in the briefs.

The judgment of the circuit court is affirmed.

PALMORE, C. J., and JONES, MILLIKEN, REED and STEPHENSON, JJ., sitting.

All concur.

---

3. By the same reasoning, we also regard the federal tax status of the taxpayer under the statutory definition of a "bank" in the Internal Revenue Code of 1964 as irrelevant. Cf. Staunton Industrial Loan Corp. v. Comm'r of Int. Rev., 120 F.2d 930 (C.A.4 1941).