446

COMMONWEALTH of Kentucky, FINANCE AND ADMINISTRATION CABINET, DEPARTMENT OF REVENUE, Appellant

v.

SAINT JOSEPH HEALTH SYSTEM, INC.; Constellation New Energy–Gas Division, LLC; and Board of Education of Fayette County, Kentucky, Appellees

and

Saint Joseph Health System, Inc., Cross–Appellant

v.

Board of Education of Fayette County, Kentucky; Commonwealth of Kentucky, Finance and Administration Cabinet, Department of Revenue; and Constellation New Energy–Gas Division, LLC, Cross–Appellees

and

Board of Education of Fayette County, Cross–Appellant

v.

Commonwealth of Kentucky, Finance And Administration Cabinet, Department of Revenue; and Constellation New Energy–Gas Division, LLC; And Saint Joseph Health System, Inc., Cross–Appellees.

Nos. 2010–CA–001086–MR, 2010–CA–001159–MR, 2010–CA–001181–MR.

Court of Appeals of Kentucky.

Jan. 18, 2013.

Bethany Atkins Rice (argued), Frankfort, KY, for Appellant/Cross–Appellee, Commonwealth of Kentucky, Finance and Administration Cabinet, Department Of Revenue.

Jay E. Ingle (argued) and Jeffrey J. Yost, Lexington, KY, for Appellee/Cross–Appellant/Cross–Appellee, Saint Joseph Health System, Inc.

Erica L. Horn, and R. Benjamin Crittenden (argued), Frankfort, KY, for Appellee/Cross–Appellee, Constellation New Energy–Gas Division, LLC.

Kara Read Marino (argued), Lexington, KY, for Appellee/Cross–Appellee/Cross–Appellant, Board of Education of Fayette County, Kentucky.

Before ACREE and WINE, Judges; LAMBERT,[1] Senior Judge.

## OPINION

LAMBERT, Senior Judge:

In this appeal and two cross-appeals, we are asked to interpret and apply Kentucky's utility gross receipts license tax ("utility tax"), a mechanism for funding schools authorized by KRS 160.593 and KRS 160.613 *et seq.*, and the exemption for institutions of purely public charity found in Section 170[2] of the Kentucky Constitution. Specifically, we are asked to determine whether: (1) the legal incidence of the utility tax levied by the Board of Education of Fayette County ("Board") falls upon Saint Joseph Health System, Inc. ("Saint Joseph"), a nonprofit hospital corporation, on natural gas it buys from Constellation New Energy—Gas Division, LLC ("Constellation")[3] for two hospitals it operates in Lexington, Kentucky, or upon Constellation, a broker that furnishes nat-

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. The pertinent language reads, "[t]here shall be exempt from taxation ... institutions of purely public charity...."

3. Constellation has taken no position on whether the utility tax applies to its sales of natural gas to Saint Joseph. It is participating in the appeal solely to support the circuit court's finding that it is not a "utility" under KRS Chapter 278 and is entitled to reimbursement of the utility tax it paid on Saint Joseph's behalf.

ural gas to Saint Joseph; and, (2) if the legal incidence of the utility tax falls upon Saint Joseph, whether it is exempt from paying the levy as an institution of purely public charity.

The genesis of this appeal is an opinion and order entered by the Fayette Circuit Court on May 13, 2010, following argument on Saint Joseph's motion for summary judgment. The circuit court found: (1) Constellation is not liable for the utility tax because it is not a utility and, (2) natural gas purchased by Saint Joseph from Constellation is subject to imposition of the utility tax because Section 170 exempts public charities only from real property taxes and the utility tax is an excise tax.[4] As a result of these findings, the circuit court ordered Saint Joseph to reimburse[5] Constellation for any utility tax it had paid on natural gas it had furnished to Saint Joseph.

On appeal, the Commonwealth of Kentucky Finance and Administration Cabinet, Department of Revenue ("Department") argues Constellation, as a utility services provider furnishing natural gas to Saint Joseph, is liable for payment of the utility tax authorized by KRS 160.593 and 160.613. The Board filed a cross-appeal echoing the Department's argument that the circuit court erred in finding Constellation is not a utility and therefore is not exempt from paying the utility tax. Saint Joseph also filed a cross-appeal, but in contrast to the Department and the Board,

it challenges the circuit court's finding that based on *Children's Psychiatric Hospital of Northern Kentucky, Inc. v. Commonwealth of Kentucky Revenue Cabinet*, 989 S.W.2d 583, 585 (Ky.1999), the Section 170 exemption for institutions of purely public charity applies only to the taxation of property. Saint Joseph claims that had the circuit court relied instead upon *Marcum v. City of Louisville Municipal Housing Commission*, 374 S.W.2d 865, 866 (Ky. 1963) (institution of purely public charity exempt from paying Kentucky use tax on utilities but not sales tax), it would have correctly concluded that an institution of purely public charity, such as Saint Joseph, is exempt from more than just property taxes. Having considered the briefs, the record and the law, we reverse.

## FACTS AND PROCEDURAL BACKGROUND

Since 1966, the General Assembly has authorized school districts to levy a utility tax to fund education. KRS 160.593(1). The tax, as amended on July 1, 2005, is not to "exceed three percent of the gross receipts derived from the furnishing, within the district, of utility services...." KRS 160.613(1).[6] The term "gross receipts" is defined as "all amounts received in money, credits, property, or other money's worth in any form, as consideration for the furnishing of utility services[.]" KRS 160.6131(4). The term "utility services" is defined as "the furnishing of communica-

---

4. Black's Law Dictionary (8th ed.2004) defines an excise tax as one "imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax ...)."

5. According to the brief for appellant, during an amnesty period in 2005, Constellation paid delinquent utility taxes in the amount of $550,819.48 for gas furnished to Saint Joseph. During this same period, Saint Joseph paid, under protest, delinquent utility taxes in

the amount of $92,315.67 for April 2000 through March 2005. Saint Joseph's payment was credited to Constellation's account which Saint Joseph claims the Department did without authorization.

6. The statute previously stated, "gross receipts derived from the furnishing, within the county, of ... natural, artificial and mixed gas."

tions services, electric power, water, and natural, artificial, and mixed gas[.]" KRS 160.6131(5). Initially, the utility tax was collected by individual school districts, including Fayette County. However, since July 1, 2005, the tax has been paid to the Department and then distributed to the school districts imposing the tax. KRS 160.617 directs in part:

> any utility ... required to pay the tax authorized by KRS 160.613 or 160.614 may increase its rates in any school district in which it is required to pay the school tax by the amount of the school tax imposed, up to three percent (3%). Any utility ... so increasing its rates shall separately state on the bills sent to its customers the amount of the increase and shall identify the amount as: "Rate increase for school tax."

This action began when Saint Joseph, describing itself as a nonprofit corporation with tax-exempt status under Section 501(c)(3) of the Internal Revenue Code of 1986 and public charity status under Section 170 of the Kentucky Constitution, filed a complaint and petition for a declaration of rights in May 2008 alleging the Board had erroneously imposed upon it the utility tax. Named as defendants in the action were the Board, the Department and Constellation.

St. Joseph argued that as the consumer of natural gas purchased from Constellation, it was the entity upon whom the incidence of the utility tax would fall under KRS 160.613(2), were it not exempt as an institution of purely public charity. Normally, responsibility for paying the utility tax would fall upon the gas supplier under KRS 160.613(1), but the Board had sent a letter to both of Saint Joseph's hospitals in March 2005, stating in part:

Saint Joseph Hospital has been identified as a consumer of natural gas purchased directly from a third party or gas broker, rather than a utility (i.e. Columbia Gas).

KRS 160.613(2) states that when taxable utilities are purchased directly from a supplier who is exempt, the consumer shall be liable for the tax and shall pay the tax directly to the county finance officer, in accordance with the provisions of KRS 160.615. Such tax is computed by multiplying the gross cost of all such utility services received by .03.

. . .

We previously notified Saint Joseph East Hospital, that. on February 28, 2005, the Fayette County Board of Education approved a limited amnesty period for the payment of any past due utility taxes owed to the school district. This amnesty would allow consumers who are currently delinquent to pay the utility taxes due and owing, with all penalties waived, as long as payment is received and/or postmarked by April 29, 2005.

Based upon the Board's letter, Saint Joseph paid the amounts due, but did so under protest, arguing that as an institution of public charity it was exempt from paying the utility tax. Hence, Saint Joseph alleged it was not liable for any further payments [7] of the utility tax, and all amounts it had paid under protest should be refunded with interest.

The Department filed an answer alleging the circuit court lacked subject matter jurisdiction because Saint Joseph had not exhausted its administrative remedies. Constellation filed an answer alleging it was not regulated by the Public Service

---

**7.** According to its brief, Saint Joseph has not paid any utility tax that might be due since July 1, 2005.

Commission ("PSC") as a public utility and under the terms of its contract with Saint Joseph, Saint Joseph was obligated to pay Constellation for any utility tax incurred.

The Board filed an answer stating: "the applicable statutes speak for themselves;" the complaint and petition should be dismissed; the taxes paid under protest were due and owing; Saint Joseph was not exempt from paying taxes; and, the claims were barred by estoppel, waiver, laches and the applicable statutes of limitation. Coupled with the Board's answer were a counterclaim against Saint Joseph and a cross-claim against Constellation, both seeking a judgment for the utility tax owed from July 1, 2005, forward plus interest, costs and any applicable penalties. In answering the cross-claim, Constellation asserted the Board lacked standing to seek payment of the utility tax because as of July 1, 2005, the Department, not the Board, was responsible for collecting and administering the utility tax under KRS 160.6154. In answering the counterclaim, Saint Joseph reiterated its position that as an institution of public charity it was exempt from imposition of the utility tax and echoed Constellation's argument that the Board lacked standing.

On January 5, 2009, Saint Joseph moved for summary judgment arguing that: only a "utility" is subject to the utility tax; while the term "utility" is not defined in KRS Chapter 160, it has generally come to mean, as explained in OAG 66–555, "a business carried on for the benefit of the public, in other words, one required to serve all the people in a given area where it operates[;]" Constellation is a natural gas broker, not a public utility company regulated by the PSC; the Board's own demand letter identified Constellation as a "third party or gas broker, rather than a utility[;]" since Constellation is exempt from paying the utility tax by operation of KRS 160.613(1), the legal incidence of (or liability for) the tax falls upon Saint Joseph under KRS 160.613(2); and, but for Saint Joseph's tax exempt status as an institution of purely public charity under *Marcum*, 374 S.W.2d at 866, it would be liable for payment of the utility tax. Finally, Saint Joseph alleged it was entitled to a refund of the utility tax paid to the Board under protest.

In responding to the summary judgment motion, Constellation framed the issue as "whether the utility tax applies to a gas marketing company that furnishes certain utility services but is not a public utility company regulated by the [PSC]." Constellation argued that while it is not a utility, it does furnish utility services to Saint Joseph. It went on to say that depending upon the court's interpretation of KRS 160.613, it was entitled to either payment of the utility tax by Saint Joseph [8] by virtue of their contract,[9] or a refund of previously made payments because Saint Joseph was exempt from paying the tax. Citing *Luckett v. Electric and Water Plant Board of City of Frankfort*, 558 S.W.2d 611, 613 (Ky.1977), OAG 83–445, OAG 82–190, and OAG 80–22, Constellation argued that while the utility tax is statutorily imposed upon the supplier of utility services, the ultimate economic burden of the tax is

---

8. Constellation asserted it had billed Saint Joseph for the utility tax for July 1, 2005, to the present, but Saint Joseph had refused payment due to its tax exempt status. Despite Saint Joseph's refusal to pay, Constellation stated it had remitted more than $75,000.00 to the Department based upon its sales of natural gas to Saint Joseph.

9. The contract between Constellation and Saint Joseph states: "The buyer (Saint Joseph) is responsible for and hereby agrees to pay all applicable sales, use, and gross receipts taxes or charges arising at or after delivery and/or passage of title."

borne by the consumer. Thus, if the court were to find Constellation's natural gas sales to Saint Joseph were subject to the utility tax, then it should also find that Saint Joseph should reimburse Constellation for the utility tax ·payments it had made. But, if the court were to find Constellation's sales of natural gas to Saint Joseph were not subject to the utility tax, then the payments made should be refunded.

In responding to the summary judgment motion, the Department reiterated its contention that the circuit court lacked subject matter jurisdiction. Alternatively, it argued the charitable exemption claimed by Saint Joseph pertains only to the levy of real property taxes and, because the utility tax is a license or excise tax, institutions of purely public charity may not claim exemption from it under Section 170.

The Department next argued that Constellation is not exempt from the utility tax because while it describes itself as a "natural gas marketing company," it admits *furnishing utility services* to Saint Joseph which the Department maintains is the taxable event triggering the operation of KRS 160.613(1). The Department put little stock in Saint Joseph's emphasis on use of the word *utility* in the statute, arguing the General Assembly never intended to restrict the application of KRS 160.613 to public utility companies. In support of its position, the Department pointed out that cable television providers are subject to the utility tax under KRS 610.614 but they are not required to serve everyone in a particular area, nor are they regulated by the PSC. Ultimately, the Department asked the court to dismiss the case for lack of subject matter jurisdiction, or alternatively, deny Saint Joseph's motion for summary judgment and declare that neither Constellation nor Saint Joseph was exempt from imposition of the utility tax.

In response to the summary judgment motion, the Board argued exemptions from taxation are disfavored and, Constellation, not Saint Joseph, is responsible for paying the utility tax because it is levied on the *furnishing* of natural gas and Constellation admits it furnishes natural gas to Saint Joseph. In support of its position, the Board cited *Texas Gas Transmission Corp. v. Board of Education of Ballard County*, 502 S.W.2d 82 (Ky.1973),[10] which held, without addressing whether Texas Gas was a utility, that natural gas furnished by an interstate pipeline carrier to a Kentucky consumer was subject to the utility tax. The Board also cited the federal appeals court's analysis of *Texas Gas* in *Martin Marietta Aluminum, Inc. v. Hancock County Board of Education*, 806 F.2d 678, 682 (6th Cir.1986), wherein it stated, "[t]he statute clearly imposed the Tax on suppliers of natural gas; the regulation· could not be construed to exempt natural gas suppliers without conflicting with the statute."

Saint Joseph filed a reply memorandum in support of its summary judgment motion arguing the Board had decided Constellation was not a "utility" as early as 2005 in its demand letter. Saint Joseph suggested the Board was changing its original view of Constellation in light of

10. Whether the pipeline company, Texas Gas, was a utility or merely the furnisher of utility services, was not addressed in the opinion which describes Texas Gas as "a pipeline company which purchases gas from producers in Louisiana and Texas and transports it to purchasers in Kentucky and other areas. Its business is primarily wholesale, selling gas to pipeline companies and distribution companies for resale." While not mentioned in the opinion, the Department states in its appellate brief that Texas Gas is not regulated as a utility by Kentucky's PSC. The holding of *Texas Gas* is that imposition of the utility tax is not an impermissible burden on interstate commerce.

Saint Joseph's argument that it was exempt from the utility tax as an institution of purely public charity, and therefore, a sizable amount of revenue would be lost.

Next, Saint Joseph argued Constellation, as a non-PSC regulated gas broker, was not liable for the utility tax—a position originally shared by the Board. Saint Joseph reads KRS 160.613 to say, "[i]f a utility furnishes the gas, the utility must pay the Utility Tax under KRS 160.613(1), but if a person who is not a utility furnishes the gas, then the user must pay it directly under KRS 160.613(2)." Saint Joseph argued reliance on *Texas Gas* was misplaced because that case concerned a pipeline company delivering gas directly to a Kentucky company whereas Constellation "is a gas broker that merely sells a commodity" and whether the pipeline company was a utility was not addressed in the *Texas Gas* opinion.

Following argument on Saint Joseph's summary judgment motion, the circuit court entered an opinion and order finding Saint Joseph liable for payment of the utility tax because Constellation was not a utility, and ordering it to reimburse Constellation for any utility tax it had paid on Saint Joseph's behalf. Rejecting this view, we now reverse.

## LEGAL ANALYSIS

■ As a preliminary matter, the Department maintains the complaint and petition for declaration of rights filed by Saint Joseph to initiate this action in Fayette Circuit Court should have been dismissed for lack of subject matter jurisdiction due to Saint Joseph's failure to exhaust administrative remedies. While this argument was advanced below, it was not addressed in the circuit court's opinion and order. KRS 160.6156(1), the statute the Department argues Saint Joseph failed to follow, provides in pertinent part, that "[a]ny utility service provider that has paid the [utility tax] may request a refund or credit for any overpayment of tax or any payment where no tax was due...." The Department's alleged lack of jurisdiction would command our attention if the complaint and petition had been filed by Constellation, *the utility service provider* in this case. But it was not. This action was initiated by Saint Joseph, *the consumer.* Thus, by the express language of KRS 160.6156(1), Saint Joseph was not required to seek relief directly from the Department before knocking on the courthouse door.

■ The essential debate between the parties is whether KRS 160.613(1) applies only to utilities, or applies to everyone who furnishes utility services. This appears to be a matter of first impression as we are not cited to any case that specifically answers this question and our research has not revealed such a case. If the statute applies only to utilities, as contended by Constellation and Saint Joseph, and we determine Constellation is not a utility, then Saint Joseph must pay the utility tax directly to the Department under KRS 160.613(2), unless we determine Saint Joseph is exempt. However, if the statute applies to everyone that furnishes utility services, as maintained by the Department and the Board, then Constellation must pay the utility tax on its sales of natural gas to Saint Joseph. Without determining who is subject to the utility tax, the circuit court simply found that Constellation was not a utility. For the reasons explained below, we disagree.

■ This is a matter of statutory interpretation. Thus, our review is *de novo.* *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transportation Cabinet,* 983 S.W.2d 488, 490 (Ky.1998). Guided by KRS 446.080(1), we must construe all statutes "liberally ... with a view to promote

their objects and carry out the intent of the legislature...." Furthermore, we must construe "[a]ll words and phrases ... according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning." KRS 446.080(4).

■ Statutes express the General Assembly's intent. *Gateway Const. Co. v. Wallbaum*, 356 S.W.2d 247, 248 (Ky.1962). To determine its intent, we must examine the precise language used in the statute without reading into it words that are not there, *Bohannon v. City of Louisville*, 193 Ky. 276, 235 S.W. 750, 752 (1921), or guessing what the General Assembly might have intended to say but did not. *Lewis v. Creasey Corporation*, 198 Ky. 409, 248 S.W. 1046, 1048 (1923).

Thus, we begin our analysis with the words of KRS 160.613(1):

> [t]here is hereby authorized a utility gross receipts license tax for schools not to exceed three percent (3%) of the gross receipts derived from the furnishing, within the district, of utility services, except that "gross receipts" shall not include amounts received for furnishing energy or energy-producing fuels, used in the course of manufacturing, processing, mining, or refining to the extent that the cost of the energy or energy-producing fuels used exceeds three percent (3%) of the cost of production, and shall not include amounts received for furnishing any of the above utilities which are to be resold.

*See also* KRS 160.6131(5) (which provides that "utility services" includes "the furnishing of communications services, electric power, water, and natural, artificial, and mixed gas."). Because the legislature used the word "utility" to describe the gross receipts that are to be taxed, Saint Joseph and Constellation argue that this is proof of the General Assembly's intent to restrict the application of KRS 160.613(1) to utilities that are regulated by the PSC. This is a strained reading of the statute that is at odds with the previously recited rules of statutory construction.

■ In our view, any entity, whether regulated as a public utility or not, that furnishes utility services, which Constellation admits it does, derives utility gross receipts from the furnishing of those utility services and therefore, is subject to imposition of the utility tax. As expressed in *Texas Gas*, "[u]nder KRS 160.613, the taxable event is 'the furnishing within the county of gas.'" 502 S.W.2d at 86. Thus, contrary to the position of Constellation and Saint Joseph, there is no legislative language in KRS 160.613(1) convincing us to read it otherwise. The statute could have said "[t]here is hereby authorized a utility gross receipts license tax for schools not to exceed three percent (3%) of the gross receipts derived from the furnishing, within the district, of utility services" *by a utility*, but it did not. Were we to adopt such an interpretation, we would be impermissibly adding words to the statute that are "not reasonably ascertainable from the language used." *Beckham v. Board of Education of Jefferson County*, 873 S.W.2d 575, 577 (Ky.1994) (citing *Gateway Const. Co.*, 356 S.W.2d at 248).

KRS 160.613(1) contains everyday words that are plain, usual, ordinary and free of ambiguity. Had the General Assembly intended the utility tax to apply only to regulated utilities, it certainly could have said so, but it did not draw such a distinction and it is neither our duty nor our prerogative to create one. *Gateway Const. Co.*, 356 S.W.2d at 248. As written and enacted, the General Assembly intended to authorize the levy of a utility tax in an amount up to three percent on the

"utility services gross receipts derived from the furnishing, within the district, of utility services[.]" This conclusion is supported by *Texas Gas*, *Luckett*, and *Martin Marietta Aluminum*. It is also consistent with KRS 160.6131(4) and (5) which focus on the act of furnishing utility services rather than drawing distinctions among those that furnish such services. Therefore, it is our holding that because Constellation furnishes natural gas to Saint Joseph, Constellation is subject to imposition of the utility tax.

For the foregoing reasons, the opinion and order of the Fayette Circuit Court is REVERSED.

ALL CONCUR.

